# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No. 2:09-cr-00794-PD-1 |
| | ) | |
| Plaintiff, | ) | Courtroom 5A |
| | ) | U.S. Courthouse |
| v. | ) | 601 Market Street |
| | ) | Philadelphia, PA 19106 |
| RAYMOND HORSCH, | ) | |
| | ) | January 10, 2011 |
| Defendant. | ) | 2:09 p.m. |

**UNDER SEAL**

TRANSCRIPT OF CHANGE OF PLEA HEARING
BEFORE HONORABLE R. BARCLAY SURRICK
UNITED STATES DISTRICT COURT JUDGE

APPEARANCES:

For the Plaintiff: U.S. Attorney's Office
By: ELIZABETH F. ABRAMS, ESQ.
615 Chestnut Street
Suite 1250
Philadelphia, PA 19106-4476

For the Defendant: Office of Jerome M. Brown
By: JEROME M. BROWN, ESQ.
1628 John F. Kennedy Boulevard
Suite 1000, 8 Penn Center
Philadelphia, PA 19103

Kardos, Rickles, Hand
and Bidlingmaier
By: MARC I. RICKLES, ESQ.
626 S. State Street
Newtown, PA 18940

ESR Operator/Deputy Clerk: MICHAEL FINNEY

TRANSCRIPTION SERVICE: TRANSCRIPTS PLUS, INC.
435 Riverview Circle
New Hope, Pennsylvania 18938
215-862-1115
CourtTranscripts@aol.com

Proceedings recorded by electronic sound recording, transcript Produced by transcription service.

# INDEX

**PAGE**


| | |
|---|---|
| Defendant Sworn | 3 |
| Rule 11 Colloquy | 3 |
| Stipulations on the record by Ms. Abrams | 22 |
| Factual basis for the charges by Ms. Abrams | 23 |
| Rule 11 Colloquy continued | 25 |
| Motion to Suppress withdrawn by Mr. Brown | 27 |
| Rule 11 Colloquy continued | 27 |
| The Court finds the plea voluntarily and intelligent entered | 27 |
| Defendant enters plea of guilty | 28 |
| Presentence investigation report ordered | 28 |
| Sentencing schedule for April 12, 2011, 10 a.m. | 28 |
| Request to seal by Ms. Abrams | 28 |

THE COURT: All right, we have the case of the United States versus Raymond Horsch, it's Number 9-794.

Counsel, please identify yourselves for the record.

MS. ABRAMS: Elizabeth Abrams for the Government, Your Honor.

MR. BROWN: Jerome Brown for Raymond Horsch.

MR. RICKLES: Marc Rickles for Raymond Horsch, Your Honor. How are you?

THE COURT: Okay. Counsel, we're here this afternoon, as I understand it, for a plea of guilty. Mr. Horsch is going to plead guilty to Counts 2, 3, and 4 of this indictment. Is that where we are?

MR. BROWN: Yes, Your Honor.

THE COURT: All right. Counsel, do you want to bring your client forward?

MR. BROWN: Yes, Your Honor.

THE COURT: Mr. Finney, will you swear, Mr. Horsch?

THE CLERK: Mr. Horsch, will you please raise your hand?

RAYMOND HORSCH, DEFENDANT, SWORN

THE COURT: All right, Mr. Horsch, how old are you?

MR. HORSCH: I'm 67 years old, Your Honor.

THE COURT: How far did you go in school?

MR. HORSCH: College.

THE COURT: You obviously read and write, then?

MR. HORSCH: Yes, I do.
THE COURT: Are you under the influence of alcohol today?
MR. HORSCH: No, I’m not.
THE COURT: Are you under the influence of any drugs?
MR. HORSCH: No, I’m not.
THE COURT: Are you on any medication?
MR. HORSCH: I’m on medication for heart, cholesterol, prostate, and depression.
THE COURT: The medication for depression, has it been prescribed by a psychiatrist?
MR. HORSCH: Yes, Your Honor, but -- yes. By -- by the --
THE COURT: So you’re under the care of a psychiatrist at the present time?
MR. HORSCH: Yes, Your Honor, at the -- the prison psychiatrist.
THE COURT: Before the -- before your incarceration, were you under the care of a psychologist or psychiatrist?
MR. HORSCH: Yes, Your Honor, off and on for 20 years.
THE COURT: Mr. Horsch, what is the medication that you’re taking?
MR. HORSCH: The current medication is Prozac, Your Honor.

THE COURT: Does that medication in any way interfere with your ability to understand what's going on around you?

MR. HORSCH: No, Your Honor, it does not.

THE COURT: Has it had any effect on your ability to communicate with your attorneys?

MR. HORSCH: No, Your Honor, it does not have any adverse effect.

THE COURT: Mr. Horsch, I'm asking all of these questions, and I'm going to ask you a lot more questions, because I have to satisfy myself that you are entering this plea voluntarily and intelligently, and that you know exactly what you're doing. Do you understand?

MR. HORSCH: Yes, Your Honor.

THE COURT: Your attorney and the Assistant United States Attorney tell me that you want to plead guilty to Count 1 of this indictment, which charges you with possession with intent to distribute 100 marijuana plants. I guess in reality, there are 455 marijuana plants, weighing approximately 89.3 grams [sic].

Count 3 charges you with possession of short barreled shotguns in furtherance of drug trafficking crimes.

And Count 4 charges you with possessing a firearm and ammunition after you have been convicted of a crime that's punishable by more than one year in jail.

Do you understand that that's what you're here for?

MR. HORSCH: Yes, Your Honor.

THE COURT: And you are going to admit that you committed each one of these crimes?

MR. HORSCH: Yes, Your Honor.

THE COURT: All right. Counsel, you've had a chance to discuss this with your client in detail?

MR. BROWN: I have, Your Honor. We've had numerous conversations.

THE COURT: You have advised him of all of his rights?

MR. BROWN: Absolutely, Your Honor.

THE COURT: Are you satisfied that he's entering a voluntary plea?

MR. BROWN: Absolutely.

THE COURT: Any question in your mind about that?

MR. BROWN: Having none whatsoever.

THE COURT: Do you need any additional time to speak with your client?

MR. BROWN: None whatsoever.

THE COURT: All right. Mr. Horsch, I'm going to ask you some more questions, and these questions go to the rights that you're giving up by entering this plea. Now, you obviously have a prior criminal conviction. That prior criminal conviction, was that after a trial? Was that after a guilty plea?

MR. HORSCH: That was after a guilty plea, Your Honor.

THE COURT: So you've been down this road before.

MR. HORSCH: Yes, Your Honor.

THE COURT: Is it more than one prior criminal conviction, or just one?

MR. HORSCH: More than one.

THE COURT: Have you ever gone to trial in a case?

MR. HORSCH: A jury trial, no.

THE COURT: Have you ever gone to trial by a judge sitting without a jury?

MR. HORSCH: Yes, Your Honor.

THE COURT: So you have pled guilty before, and you've been to trial before, before a judge?

MR. HORSCH: Yes, Your Honor.

THE COURT: Okay. Let's talk about the rights that you have in this matter at this point, and the fact that you are giving up those rights. You have a constitutional right to go to trial by jury in this matter. Do you understand that?

MR. HORSCH: Yes.

THE COURT: And if you chose to go to trial in this matter, we would schedule the matter for a date certain. We would bring a panel of prospective jurors into this courtroom. They would all be citizens from the Eastern District of Pennsylvania, and you could participate in the selection of the

jury that would hear the case. Do you understand that?

MR. HORSCH: Yes, Your Honor.

THE COURT: Do you understand that if you decided to go to trial, you'd have a right to file pretrial motions, motions to suppress evidence, and other pretrial motions? Do you understand that?

MR. HORSCH: Yes, Your Honor.

THE COURT: Do you understand that if you filed pretrial motions, I would have hearings on those motions? Do you understand that?

MR. HORSCH: Yes, Your Honor.

THE COURT: And I would rule on them after I heard whatever was presented, do you understand that?

MR. HORSCH: Yes.

THE COURT: Do you understand that if evidence was obtained in violation of your constitutional rights, that evidence could not be used at trial? It would be suppressed, do you understand that?

MR. HORSCH: Yes, Your Honor.

THE COURT: Do you understand that if you went to trial in this case, as I said, you could participate in the selection of the jury that would hear the case? Do you understand that?

MR. HORSCH: Yes, Your Honor.

THE COURT: You could exercise challenges for cause,

and you could exercise peremptory challenges of prospective jurors, do you understand that?

MR. HORSCH: Yes, Your Honor.

THE COURT: And do you understand that if -- after exercising your challenges, and after the Government did the same, 12 jurors would be impaneled to hear the matter?

MR. HORSCH: Yes, Your Honor.

THE COURT: Do you understand that I would instruct those 12 jurors that you are presumed innocent, that the burden is upon the Government to prove you guilty by evidence beyond a reasonable doubt? Do you understand that?

MR. HORSCH: Yes, Your Honor.

THE COURT: And you understand that if, after hearing all of the evidence and testimony, any one of those 12 jurors had a reasonable doubt as to your guilt, you could not be found guilty, because a verdict of a criminal jury must be unanimous, all must agree. Do you understand that?

MR. HORSCH: Yes, I do, Your Honor.

THE COURT: You understand that if you went to trial in this matter, you have a right to confront and to cross-examine all the witnesses against you.

MR. HORSCH: Yes, I understand that, Your Honor.

THE COURT: You have a right to present your own witnesses. And if you subpoenaed witnesses, we would require that they appear. Do you understand that?

MR. HORSCH: Yes, Your Honor.
THE COURT: Do you understand that you do not have to testify at trial? You have a constitutional right to remain silent. And if you choose to exercise that right, it cannot be held against you in any way. Do you understand that?
MR. HORSCH: Yes, I do, Your Honor.
THE COURT: Do you understand that if you went to trial in this matter and you were found guilty, if you were convicted, you'd have a right to appeal? And we'd give you an attorney free of charge to file that appeal if you couldn't afford one. Do you understand that?
MR. HORSCH: Yes, I do, Your Honor.
THE COURT: Do you understand that in that appeal, you could raise objections to anything that happened during the course of the trial that you felt was improper? Do you understand that?
MR. HORSCH: Yes.
THE COURT: And you could also raise objection to my rulings on those pretrial motions that I mentioned to you a few minutes ago. Do you understand that?
MR. HORSCH: Yes, Your Honor.
THE COURT: Mr. Horsch, you're telling me you don't want to go through that trial process. Is that what you're telling me?
MR. HORSCH: Yes, Your Honor.

THE COURT: You want to admit your guilt here this afternoon and take the consequences.

MR. HORSCH: That's true, Your Honor, yes.

THE COURT: Do you understand that if I accept this plea this afternoon, I'm simply going to order a presentence investigation report and schedule the matter for sentencing? Do you understand that?

MR. HORSCH: Yes, Your Honor.

THE COURT: You and your attorney will get a copy of that presentence report, and you can make objections to it at the time of sentencing. Do you understand that?

MR. HORSCH: Yes, Your Honor.

THE COURT: Do you understand that there are sentencing guidelines in the federal system? Those guidelines are advisory, they're not mandatory, but I must take them into consideration when I'm imposing sentence. Do you understand that?

MR. HORSCH: Yes.

THE COURT: And knowing all of this, you still want to plead guilty?

MR. HORSCH: Yes, Your Honor.

THE COURT: Mr. Horsch, are you entering this plea of your own free will?

MR. HORSCH: I am.

THE COURT: Anybody promised you anything in return

for this plea?

MR. HORSCH: No, Your Honor.

THE COURT: Anyone put any pressure on you to make you enter this plea?

MR. HORSCH: No, Your Honor.

THE COURT: Do you know what you're doing?

MR. HORSCH: I do, Your Honor.

THE COURT: Do you understand -- do you have any questions about what you're doing?

MR. HORSCH: No, Your Honor.

THE COURT: If you have questions, now is the time to ask them, not later. Do you understand that?

MR. HORSCH: I understand.

THE COURT: Now, Mr. Horsch, you entered into a plea agreement with the Government in this case, is that correct?

MR. HORSCH: Yes, Your Honor.

THE COURT: That plea agreement is a 12-page document, and I'm holding it in my hands right now. On Page 12 is a place for your signature. Your name is typed in, and it would appear that you've signed your name on that line. Is that your signature?

MR. HORSCH: Yes, it is, Your Honor.

THE COURT: Mr. Horsch, did you read this document before you signed it?

MR. HORSCH: Yes, I did, Your Honor.

THE COURT: Did you go over it with your attorneys before you signed it?
MR. HORSCH: Yes, I did, Your Honor.
THE COURT: Did you understand each and every paragraph of it before you signed it?
MR. HORSCH: Yes, I did.
THE COURT: And did you sign it of your own free will?
MR. HORSCH: Yes, I did, Your Honor.
THE COURT: Attached to that plea agreement is an Acknowledgment of Rights Form; that document is a two-page document. And, again, it would appear you've signed that document on Page 2. Is that your signature?
MR. HORSCH: Yes, it is, Your Honor.
THE COURT: Did you read that document before you signed it, Mr. Horsch?
MR. HORSCH: Yes, I did.
THE COURT: Did you understand each paragraph of it before you signed it?
MR. HORSCH: Yes, I did, Your Honor.
THE COURT: Did you discuss it with your attorney?
MR. HORSCH: Yes, I did.
THE COURT: And did you sign that document of your own free will?
MR. HORSCH: I did, Your Honor.

THE COURT: There's a couple of provisions in this plea agreement that I want to discuss with you just briefly. There's a provision in this plea agreement for a downward departure under the Sentencing Guidelines 5K1.1 and under 3553(e) from the mandatory sentences that are involved here.

Mr. Horsch, do you understand that whether or not a motion for downward departure, or departure from the mandatory minimum sentences, is made here is entirely within the discretion of the Government?

MR. HORSCH: I understand that.

THE COURT: Do you understand that whether a motion, if it is made by the Government, whether it's granted is within my discretion?

MR. HORSCH: I understand that, Your Honor.

THE COURT: That provision is particularly significant when we consider the sentences that can be imposed in this situation. Do you understand that?

MR. HORSCH: I do, Your Honor.

THE COURT: For Count 1 -- I guess it's 2 of the indictment, it charges you with possession of the -- possession with intent to distribute the marijuana plants. That crime is punishable by a mandatory minimum 10-year jail sentence. Do you understand that?

MR. HORSCH: I do, Your Honor.

THE COURT: And it's -- there can be a jail sentence

of up to life imprisonment. Do you understand that?

MR. HORSCH: I do, Your Honor.

THE COURT: Do you understand that that crime is punishable by a mandatory minimum eight years of supervised release? Do you understand that?

MR. HORSCH: Yes, I do.

THE COURT: And there can be up to a lifetime of supervised release imposed. Do you understand that?

MR. HORSCH: I do.

THE COURT: Do you understand that if you're on supervised release and you violate the terms and conditions of supervised release, you can be brought back into court and you can be re-incarcerated, be put back in jail for violating the terms of supervised release? Do you understand that?

MR. HORSCH: I understand, Your Honor.

THE COURT: Do you understand that there is a fine that can be imposed for Count 2 of up to $4 million?

MR. HORSCH: I understand that, Your Honor.

THE COURT: And you're going to have to pay a Special Assessment of $100 on Count 2. Do you understand that?

MR. HORSCH: I understand.

THE COURT: Do you understand that if the Government had to prove this charge against you in Count 2, they would have to prove that you possessed marijuana plants, that you knew that the marijuana plants were controlled substances, and

that you intended to distribute the marijuana? That is, you intended to transfer it from yourself to another person. Do you understand that?

MR. HORSCH: Yes, Your Honor.

THE COURT: And they would have to prove that there were 100 or more marijuana plants involved. Do you understand that?

MR. HORSCH: Yes.

THE COURT: And in this instance, they contended, as I said earlier, there were 455 marijuana plants. Do you understand that?

MR. HORSCH: Yes, Your Honor.

THE COURT: Mr. Horsch, do you have any questions about the crime in Count 2 that you're admitting?

MR. HORSCH: No, Your Honor.

THE COURT: Any questions about the punishment that can be imposed for that crime?

MR. HORSCH: No, Your Honor.

THE COURT: Count 3 charges you with possession of firearms in furtherance of a drug trafficking crime. Do you understand that?

MR. HORSCH: Yes, Your Honor.

THE COURT: That crime is punishable by a mandatory minimum ten-year jail sentence. Do you understand that?

MR. HORSCH: Yes, Your Honor.

THE COURT: And that ten-year jail sentence runs consecutively to or at the end of --

MR. BROWN: Your Honor, I think it’s 15 years, actually, if I’m not mistaken.

THE COURT: I was looking at the statute. The plea agreement provides ten.

MR. BROWN: But I think it’s -- I think it’s really 15.

MS. ABRAMS: Your Honor, I apologize; I don’t have the statute book in front of me to look it up.

MR. BROWN: But I -- I --

THE COURT: I was looking at it earlier, and I thought it was -- okay. You’re --

MR. BROWN: Let me -- if --

THE COURT: You’re a mandatory minimum 15 consecutive --

MR. BROWN: Your Honor, let’s -- if I would, just to clarify things, he’s been under the impression that it’s at least 15 years. So, whether it’s ten or 15, he knows it’s a significant period of time.

THE COURT: Well, we ought to make sure of what it is before we finish this.

MR. BROWN: Okay.

THE COURT: Counsel, you’re looking at it at the present time?

MS. ABRAMS: Your Honor, I'm sorry, but the book that we have available does not actually state it. If we can take a --

THE COURT: Why don't you take a look, Counsel?

MR. BROWN: May I approach, Your Honor?

THE COURT: This is 2008, but I don't think it's changed.

(Pause/Attorneys engaged in off-the-record colloquy)

MR. BROWN: I stand corrected, Your Honor.

THE COURT: It's ten years?

MR. BROWN: It is ten years.

THE COURT: Okay.

MS. ABRAMS: It's 924(c)(1)(B)(i), Your Honor.

THE COURT: I was looking at it, and I thought that's what it was. Okay.

MR. BROWN: Your Honor, may I approach?

THE COURT: Certainly. Thank you.

MR. BROWN: Thank you.

THE COURT: Okay, Mr. Horsch, you understand that Count 3, the possession of firearms in furtherance of drug trafficking crime, is punishable by a mandatory minimum of ten years in jail. That ten-year sentence runs consecutively to any sentence imposed on Count 3 -- or Count 2, do you understand that?

MR. HORSCH: I understand, Your Honor.

THE COURT: Do you understand that you can be sentenced to up to life imprisonment on that offense?

MR. HORSCH: I understand.

THE COURT: There is a supervised release that follows jail of up to five years on Count 3. Do you understand that?

MR. HORSCH: I understand, Your Honor.

THE COURT: And, again, if you violate the terms of supervised release, you can be reincarnated. Do you understand that?

MR. HORSCH: I understand, Your Honor.

THE COURT: There's a fine that can be imposed on Count 3 of $250,000 -- up to $250,000. Do you understand that?

MR. HORSCH: I understand.

THE COURT: You'll have to pay another Special Assessment of $100 on Count 3. Do you understand that?

MR. HORSCH: I understand, Your Honor.

THE COURT: And if the Government had to prove this charge against you, they would have to prove that you possessed the firearm in furtherance of a drug trafficking crime, that firearm being a short-barreled shotgun. That is a shotgun with a barrel of less than 18 inches with an overall length of less than 26 inches. Do you understand that?

MR. HORSCH: I understand, Your Honor.

THE COURT: I think there were several firearms

involved here.

MR. BROWN: Yes.

THE COURT: All right. Mr. Horsch, any questions about Count 3?

MR. HORSCH: No questions, Your Honor.

THE COURT: All right. Let's talk about Count 4. That's the possession of a firearm by a convicted felon. That a crime is punishable by up to ten years in jail. Do you understand that?

MR. HORSCH: I understand, Your Honor.

THE COURT: There's a supervised release that follows jail of up to three years. Do you understand that?

MR. HORSCH: I understand.

THE COURT: There's a fine of up to $250,000.

MR. HORSCH: I understand that, Your Honor.

THE COURT: And a Special Assessment of $100.

MR. HORSCH: I understand.

THE COURT: And if the Government had to prove that charge against you, they'd have to prove that you possessed the firearm. And that prior to possessing that firearm, you had been convicted of a crime punishable by more than one year in jail and that you possessed the firearm in or affecting interstate or foreign commerce. Do you understand that?

MR. HORSCH: I understand, Your Honor.

THE COURT: Any questions about the crime you're

admitting in Count 4?

MR. HORSCH: No questions, Your Honor.

THE COURT: Any questions about the punishment?

MR. HORSCH: No, Your Honor.

THE COURT: Mr. Horsch, if I accept this plea this afternoon, you're going to subject yourself under the statutes to a potential maximum sentence of life in prison. Do you understand that?

MR. HORSCH: I understand, Your Honor.

THE COURT: And there's a mandatory minimum of 20 years in jail. Do you understand that?

MR. HORSCH: I understand.

THE COURT: There's a mandatory minimum eight years of supervised release. Do you understand that?

MR. HORSCH: I understand, Your Honor.

THE COURT: And you can be sentenced to up to a lifetime of supervised release. Do you understand that?

MR. HORSCH: I understand.

THE COURT: There's fines of $4.5 million that can be imposed.

MR. HORSCH: I understand.

THE COURT: And you're going to have to pay $300 in Special Assessments, you understand that?

MR. HORSCH: I understand.

THE COURT: Finally, Mr. Horsch, your plea agreement

has a provision in it that waives your appeal rights. Did you go over that provision with your attorney?

MR. HORSCH: Yes, I did, Your Honor.

THE COURT: Did you understand that you are waiving your appeal rights here?

MR. HORSCH: I understand, Your Honor.

THE COURT: Do you have any questions about that provision in your plea agreement waiving your appeal rights?

MR. HORSCH: No, Your Honor.

THE COURT: Do I need to discuss it or explain it to you in any more detail?

MR. HORSCH: No, I believe I understand it, Your Honor.

THE COURT: Counsel, do you want to give me the factual basis for these charges?

MS. ABRAMS: Yes, Your Honor. May I also point out that there are some stipulations in the plea agreement?

THE COURT: You may.

MS. ABRAMS: That I'd like to place on the record.

THE COURT: All right. Go ahead and put them on the record. The stipulations are not binding on this Court, but --

MS. ABRAMS: That's correct, Your Honor. They're not binding on the Court or on Probation. But the defendant, in his plea agreement, has agreed to them. And that is that on or about July 22nd, 2009, the defendant possessed 455 marijuana

plants with a total weight of 89.3 pounds.

He's also stipulated that each marijuana plant under the guidelines is deemed to weigh 100 grams.

And we have stipulated that as of the date of the agreement, he is entitled to both a two-point downward adjustment for acceptance of responsibility and a one-level downward adjustment, as well, for acceptance of responsibility.

Those are the stipulations contained in the agreement.

THE COURT: Do you understand those stipulations?

MR. HORSCH: I do, Your Honor.

THE COURT: All right. Counsel, do you want to give me the facts?

MS. ABRAMS: Yes, Your Honor. July 22, 2009, Mr. Horsch was the owner of 520 Airy Street in Chalfont, Pennsylvania, in Bucks County, in the Eastern District of PA.

In the basement of that home on that date, New Britain Township Police discovered a marijuana grow lab. The police obtained a warrant, and they did disassemble that lab, recovering a total of 455 marijuana plants with a total weight of 89.3 pounds.

They also found Ziploc bags of processed marijuana and lab paraphernalia.

They obtained a second warrant and also obtained firearms that they had seen in the premises.

Lab analysis shows that the plants that were seized from Mr. Horsch's basement were actually marijuana plants.

He had three firearms that are charged in the superseding indictment. Two of those are sawed-off shotguns. All three firearms were found in his bedroom there. They are an Ithaca Gun Company brand, 12-gauge, pump-action shotgun, Model 37, Serial Number 33802. That gun has a barrel of -- length of 14 and one-sixteenths inches, and an overall length of 24 and seven-eighths inches.

There was also a Belgian brand, 16-gauge, double-barrel shotgun, Serial Number 19585. That firearm has a barrel of 11 and three-sixteenths inches and an overall length of 19 and three-eighths inches.

And the third firearm is a U.S. Military M1 Carbine made by IBM Corporation, Serial Number 3702632.

Police also found several different types of ammunition. There were 250 cartridges of point -- I'm sorry -- of 30 caliber carbide ammunition bearing Sellier & Bellot on the headstamp. There were ten 16-gauge shotgun shells bearing Rottweil on the headstamp. Twenty-three 410 caliber shotgun shells bearing Fiocchi on the headstamp. Twenty-three 16-gauge shotgun shells bearing Gamebore on the headstamp. One spent 16-gauge shotgun shell bearing Gamebore on the headstamp. And 38 16-gauge shotgun shells bearing Fiocchi on the headstamp.

If this matter were to proceed to trial, the

Government would present expert testimony to show that Mr. Horsch possessed and grew the marijuana in his basement for the purposes of distribution, and that the three firearms charge [sic] were possessed in furtherance of his marijuana distribution business.

In addition, a firearms expert would testify that the firearms and the ammunition that were discovered in his bedroom at his home were -- the firearms were operable and the -- all of the items, firearms and ammunition, had been manufactured outside of the Commonwealth of Pennsylvania.

And prior to July 22nd, 2009, Mr. Horsch had been convicted of a federal drug trafficking offense, which -- because of which he was prohibited from possessing firearms.

These are only the essential facts that would need to be proven at trial.

THE COURT: Mr. Horsch, you heard what the Assistant United States Attorney just said with regard to the facts of this matter?

MR. HORSCH: I did, Your Honor.

THE COURT: Do you understand that you are admitting those facts?

MR. HORSCH: I understand, Your Honor.

THE COURT: Do you admit those facts?

MR. HORSCH: I do, Your Honor.

THE COURT: Do you understand that if you did the

things that you just admitted, you're, in fact, guilty of these charges in Counts 2, 3, and 4?

MR. HORSCH: I understand, Your Honor.

THE COURT: Mr. Horsch, are you on probation or parole at the present time?

MR. HORSCH: No, Your Honor.

THE COURT: I ask you that because you have a prior criminal record. And if you're on probation or parole when a plea like this is taken, that can be a violation of your probation or parole. You understand that?

MR. HORSCH: I understand that.

THE COURT: And if you violate the terms of probation or parole, the sentencing judge can bring you back and re-incarcerate you, or the Parole Board can do the same. You understand that?

MR. HORSCH: I understand.

THE COURT: And, finally, Mr. Horsch, you understand that when I bring you back here for sentencing, I will impose a flat sentence of incarceration on you. There is no parole in the federal system, do you understand that?

MR. HORSCH: I understand.

THE COURT: And you understand that if the Government does not make a downward departure motion, you're facing the mandatory minimum sentences that I have just mentioned to you. And I don't know exactly what the guideline implications are;

we will make that determination at the time of sentencing. Do you understand that?

MR. HORSCH: I understand, Your Honor.

THE COURT: The guidelines potentially could be more severe than the mandatory sentences. I don't know until we figure it out at sentencing, do you understand that?

MR. HORSCH: I understand.

THE COURT: Counsel, do you have anything further?

MR. BROWN: Your Honor, I think as a matter of housekeeping, there was a motion to suppress filed.

THE COURT: Was there?

MR. BROWN: And we would formally withdraw that motion.

THE COURT: I see that in the file, yes.

Mr. Horsch, with that motion to suppress -- we talked about the motions to suppress earlier. Your attorney is withdrawing that so that you can move forward with this guilty play. And that's what you want to do?

MR. HORSCH: Yes, Your Honor.

THE COURT: All right. Anything further?

MS. ABRAMS: Nothing for the Government, Your Honor.

MR. BROWN: Nothing from the defense.

THE COURT: I find this plea voluntarily and intelligently entered. There is a factual basis for it; I'll accept it.

Mr. Finney, do you want to take the plea?

THE CLERK: Raymond Horsch, previously you pled not guilty to Bill of Indictment Number 09-794, charging you with possession with intent to distribute 100 or more marijuana plants, in violation of 21 United States Code Section 841(a)(1),(b)(1)(B);

Possession of a short barreled shotgun, in violation -- I'm sorry -- in furtherance of drug trafficking crime, in violation of 18 United States Code Section 924(c)(1)(A), (c)(1)(B)(i); and

Possession of a firearm and ammunition by a convicted felon, in violation of 18 United States Code Section 922(g)(1).

As to Counts 2, 3, and 4 of a superseding indictment, how do you plead now, guilty or not guilty?

MR. HORSCH: Guilty.

THE COURT: All right. The guilty plea agreement is made a part of the record of these proceedings.

I'm going to order the presentence investigation report.

I am going to schedule this matter for sentencing in April, Tuesday, April 12th, 2011 at 10 a.m.

MS. ABRAMS: Your Honor, I'd just like to request that the minutes of today's proceedings be sealed.

THE COURT: Counsel, will you -- did you submit a sealing order?

MS. ABRAMS: I did not, Your Honor, but I will send one.

THE COURT: If you submit a sealing order, I'll sign it. All right?

MS. ABRAMS: Thank you, Your Honor.

THE COURT: Anything further?

MR. RICKLES: No, Your Honor.

MR. BROWN: No, Your Honor.

THE COURT: Okay.

(Whereupon, at 2:42 p.m., the hearing was adjourned.)

CERTIFICATE OF TRANSCRIBER

I, KAREN HARTMANN, a certified Electronic Court Transcriber, certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.

/s/ Karen Hartmann

Karen Hartmann, AAERT CET Date: October 31, 2026

TRANSCRIPTS PLUS, INC.